**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WILLIAM J. TURNER, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:18-cv-00868** |
| **v.** | ) | **Judge Richardson / Frensley** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 17. Plaintiff has filed an accompanying Memorandum of Law. Docket No. 17-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on July 9, 2014,[1] alleging that he had been disabled since February 12, 2012, due to "Double Lung Transplant,"

---

[1] Plaintiff's application has a protective filing date of July 8, 2014. TR 115, 139.

"Multiple Level Back Injury," "Osteoporosis," "Chronic Digestive Disorder," "Adult Attention

Deficit Disorder," "Depression," "Post Traumatic Stress Disorder," "Chronic Kidney Stones,"

and "High Blood Pressure." *See, e.g.,* Docket No. 15, Attachment ("TR"), pp. 242-243, 414.

Plaintiff's application was denied both initially (TR 115) and upon reconsideration (TR 139).

Plaintiff subsequently requested (TR 151-52) and received (TR 66-96) a hearing. Plaintiff's

initial hearing was conducted on January 13, 2017, by Administrative Law Judge ("ALJ")

Shannon H. Heath. TR 66-96.  At the request of Plaintiff (TR 20), a supplemental hearing was

conducted on August 15, 2017. TR 50-65.  Plaintiff and vocational expert ("VE"), Charles

Wheeler, appeared and testified at both hearings. *Id.* at 50; 66.

On February 6, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR

17-35.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant last met the insured status requirements of the
>     Social Security Act on December 31, 2017.
>
> 2.  The claimant did not engage in substantial gainful activity
>     during the period from his alleged onset date of February 12,
>     2013 through his date last insured of December 31, 2017 (20
>     CFR 404.1571 *et seq*.).
>
> 3.  Through the date last insured, the claimant had the following
>     severe impairments: degenerative disc disease of the lumbar
>     spine; history of lung transplant; depressive disorder; attention
>     deficit hyperactivity disorder and post-traumatic stress disorder
>     (20 CFR 404.1520)(c)).
>
> 4.  Through the date last insured, the claimant did not have an
>     impairment or combination of impairments that met or
>     medically equaled the severity of one of the listed impairments
>     in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
>     404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the
>     undersigned finds that, through the date last insured, the

claimant retains the capacity to lift up to ten pounds occasionally and five pounds frequently. He is able to stand and walk up to two hours total in an eight-hour workday. He can sit up to six hours total in an eight-hour workday. He must never climb ladders, ropes or scaffolds. He can frequently balance but occasionally climb ramps, stairs, stoop, kneel[,] crouch and crawl. He must avoid concentrated exposure to pulmonary irritants. He can understand, remember and carry out simple and low-level detailed tasks. He can maintain concentration, persistence and pace with normal breaks spread throughout the workday. He is able to interact appropriately with supervisors and coworkers. He can interact with the public occasionally. He is able to adapt to occasional changes in the workplace.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 15, 1968 and was 49 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has a two-year college education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 12, 2013, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

TR 23-34.

On April 2, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 241. On July 18, 2018, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

5

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2); *see also Damron v.*

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

*Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) improperly weighing the medical and opinion evidence; (2) improperly determining the severity of Plaintiff's conditions; (3) failing to consider "the synergistic impact of all these disorders working in concert against [Plaintiff] to prevent him from sustaining employment"; (4) finding "that [Plaintiff] had no severe impairments that had lasted for more than twelve months nor any that were expected to last longer than twelve months"; and (5) concluding that Plaintiff did not meet listing 12.04. Docket No. 17-1, pp. 4-16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

1. **Weight Accorded to the Medical and Opinion Evidence Regarding Plaintiff's Physical and Mental Limitations and the ALJ's Resultant Physical and Mental RFC Determination**

Plaintiff first argues that the ALJ "erred by not giving sufficient weight to some medical evidence while over emphasizing the importance of other evidence," and, "by failing to adequately explain why some evidence was considered probative of the issues while other evidence was discounted." Docket No. 17-1, p. 7. Plaintiff further asserts as error the ALJ's assigning of "greater weight to state agency consultative exams than of [Plaintiff's] own treating physicians." *Id.* As support for his claim that the ALJ erred in weighing the medical evidence, Plaintiff cites: "MARKED restrictions . . . due to attention deficit disorder" (*Id.* at 7-8, *citing* TR 1779); Plaintiff's unemployment (*Id.* at 8); a suicide attempt and psychiatric unit visits (*Id., citing* TR 900); GAF scores (*Id., citing* TR 108); "hypersensitive[ity] to germs and his paranoia about getting sick (*Id., citing* TR 903); and Dr. Ward's treatment notes (*Id.* at 10, *citing* TR 1451-1461). In relation to the assignment of error claiming the ALJ's failure in according more weight to State agency consultants than to Plaintiff's treating physician, Plaintiff cites as support

that: "Dr. Langworthy's answers are based on the medical opinions [Plaintiff] has and continues to treat" (*Id.* at 9); "[b]oth [Drs. Gilmore and Thomason] are State agency consultants and saw [Plaintiff] one time" (*Id.*); "Ms. Starr treated [Plaintiff] for a period of ten years" with facts supporting her medical opinion (*Id.* at 11, *citing* TR 890-911; 900); and "[t]he ALJ's rejection of Dr. Germek's report." (*Id.* at 12, *citing* TR 1124).

Defendant responds that the ALJ "properly reviewed the record as a whole to find that Plaintiff could perform a restricted range of low-detailed, sedentary work in significant numbers in the national economy and was not disabled."  Docket No. 18, p. 6.  Additionally, Defendant contends that the ALJ properly considered the medical opinions of record (*Id.* at 8, *citing* TR 22-24) and properly resolved the conflicts among the opinions (*Id.* at 9, *citing* TR 27-29).  As support, Defendant recounts the ALJ's findings that: Dr. Workman was a one-time consultative examiner whose opinion was entitled to little weight because it was inconsistent with the record. *Id.*, *citing* TR 28); Drs. Gilman's and Thomason's opinions were due greater weight because they were consistent with the record (*Id.* at 9-10); Dr. Langworthy's opinion was inconsistent with the record (*Id.* at 10); and Dr. Germek's opinion was based on a one-time consultative evaluation, was inconsistent with the record, and was not expressed in functional terms (*Id.* at 11, *citing* TR 31).  Defendant further argues that the ALJ accorded proper weight to Dr. Kupstas' opinion and Dr. Elliot's evaluation (*Id.* at 12); "properly considered Ms. Starr's August 2014 letter stating that Plaintiff had difficulty focusing to run his business" (*Id.* at 13, *citing* TR 906); properly determined that Ms. Starr was not an acceptable medical source (*Id., citing* TR 29-30); and appropriately noted that Ms. Starr did not provide a specific opinion on Plaintiff's functional limitations (*Id.* at 14).

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> . . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  If the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

As an initial matter, with regard to the evidence before the ALJ upon which she based her decision, the ALJ noted:

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

Attorney Forest Jackson appeared at the January 13, 2017 disability hearing for Attorney John Heard, the claimant's primary representative of record. Mr. Jackson did not have all the necessary records at the time of the hearing. The claimant's attorneys were given several extensions of time to properly develop the file as the record remained in POST hearing status until April 24, 2017. See Exhibits 28E-30E. However, only Exhibits 6D and 17F-23F were received, admitted into evidence, and have been considered.

Interrogatories were sent to Mr. Wheeler, the VE upon receipt of POST hearing evidence from treating providers Warren Langworthy, M.D. and Traci Boswell, N.P. (Exhibits 24F and 25F). A supplemental hearing was held on August 15, 2017, at the request of the claimant's attorneys. Attorney John Ketcherside appeared at the supplemental hearing for Mr. Heard. It is noted that he had no questions for the [*sic*] Mr. Wheeler regarding the past work classification when given the opportunity. He was given the opportunity, at his request, to ask hypothetical questions of Mr. Wheeler regarding proposed limitations and the effect on the ability to work with the same.

. . .

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) are satisfied and admits this evidence into the record.

TR 20-21.

Before discussing the medical, testimonial, and opinion evidence, the ALJ in the case at bar stated:

. . . [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.

. . .

The undersigned notes a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be

shown by the objective medical evidence alone. In developing the determined residual functional capacity, the undersigned notes 20 CFR 404.1529(c) and 416.929(c) describes the types of evidence, including the factors below (as related to the case), that the Administrative Law Judge has considered, in addition to the objective medical evidence, to assess the consistency of the claimant's symptoms (SSR 16-3p):

1. The claimant's daily activities;
2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying on his or her back, standing for 15 to 20 minutes every hour; or sleeping on a board) and:
7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

TR 26-27.

The ALJ then considered the medical, testimonial, and opinion evidence relating to

Plaintiff's severe physical impairments as follows:

The claimant was 48 years of age with a two-year college education at the time of his January 13, 2017, disability hearing. He alleges disability due to musculoskeletal, cardiovascular and mental health difficulties. He maintains his condition is progressively getting worse despite treatment. However, as seen below, medical records fail to substantiate the claimant's complaints.

The claimant has a history of degenerative disc disease of the lumbar spine, which allegedly causes chronic tenderness, stiffness and pain in his neck and lower back that radiates into his shoulders, arms, and legs causing numbness and weakness. In August 2013, he underwent percutaneous vertebroplasty. Treatment was successful. Musculoskeletal examinations performed throughout the relevant period in question consistently

show normal ranges of motion. The evidence further indicates the claimant has not presented for treatment since August 2013 (Exhibits 7F, 13F, 15F, 17F, 18F, 23F, and 24F).

The evidence indicates the claimant received a double lung transplant in May 2003 with only one mild episode of rejection immediately post-transplant. He followed up with Vanderbilt University Medical Center, Warren Langworthy, M.D. and Karen Starr. X-rays of the claimant's chest taken December 18, 2012, prior to the alleged onset date in this matter, showed small focus atelectasis or fibrosis at the right medial lung base and status-post median sternotomy. No pulmonary edema was identified. Lung perfusions scans performed throughout the relevant period in question have consistently been stable.

By referral of Ivan Robbins, M.D., a treating source, the claimant underwent pulmonary function testing on May 31, 2016. Test results identified a mild obstructive deficit but no wheezing or broncho spasms were present. The claimants forced expiratory volume 1 (FEV 1) was found to be 2.84, which falls within the normal range. Upon examination, the claimant was noted to be compliant with testing protocol; therefore, validating test results. The consultant concluded the claimant did expend maximum efforts (Exhibits 20F and 24F).

X-rays of the claimant's chest taken May 31, 2016, showed the presence of a mild ventilator defect; however, the transplanted lungs remained clear. It should be noted that medical records throughout the relevant period in question repeatedly indicate the claimant's transplant was stable and he was reportedly doing quite well.

By request of the Social Security Administration, the claimant presented to an all systems consultative examination on December 13, 2014, performed by Barry Workman, M.D. Upon presentation, the claimant was observed ambulating independently without an assistive device. His gait was normal. He climbed on and off the examination table without difficulty. A musculoskeletal examination was administered to determine the severity of the claimant's complaints. No evidence of scoliosis was present. No spasms of the paraspinous muscles was noted nor was kyphosis identified. Supine straight leg raising maneuvers were reportedly 60 degrees bilaterally. He demonstrated some difficulty bending over and touching his toes; however, he successfully performed heel to toe and tandem heel walking techniques. Motor strength was reportedly 5/5 in all extremities. No evidence of muscular

atrophy was identified. Sensation was intact to pinprick and touch over upper and lower extremities. Cranial nerves II through XII were intact. Reflexes were 2+ on the left and right biceps, left and right triceps, right and left patella and bilateral Achilles. Forward flexion of the lumbar spine was 45 degrees and extension was 20 degrees. Left and right lateral flexion was 30 degrees but range of motion involving the cervical spine fell within normal limits. Likewise, ranges of motion maneuvers involving the shoulders, elbows, wrist, bilateral hands, knees, hips and ankles fell within normal limits.

The claimant displayed some difficulty hearing speech at a normal voice level but he was not wearing a hearing aide. His speech was reportedly understandable throughout the examination (Exhibit 13F).

As for the opinion evidence, Dr. Workman is a one-time examining source who was not involved in treatment of the claimant. His assessment of the claimant's functional limitations is generally inconsistent with the medical evidence as a whole. In terms of the manipulative limitations, this conclusion is not supported due to inconsistencies outlined above. For instance, the examination findings showed normal ranges or [sic] motion of the upper extremities and hands. Normal strength in both the claimant's upper and lower extremities including grip strength was reported. Therefore, the undersigned affords little weight to the opinion provided by Dr. Workman.

On December 24, 2014, Murray J. Gilman, M.D. a State agency consultant, opined the claimant retained the capacity to lift and carry up to ten pounds occasionally and less than ten pounds frequently. He stated the claimant was able to stand or walk up to four hours total in an eight-hour workday with normal breaks. He further stated the claimant was able to sit up to six hours total in an eight-hour workday with normal breaks. He concluded the claimant could occasionally balance, stoop, kneel, crouch and crawl but never climb ladders, ropes or scaffolds (Exhibit 1A).

On June 23, 2015, Thomas O. Thomason, M.D., a State agency consultant, reviewed the claimant's file at the reconsideration level and opined the claimant retained the capacity to lift and carry up to ten pounds occasionally and less than ten pounds frequently. He stated the claimant was able to stand and walk up to two hours total in an eight-hour workday with normal breaks. He reported the claimant could frequently balance but occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He concluded the

claimant could never climb ladders, ropes or scaffolds (Exhibit 3A).

Doctors Gilman and Thomason are familiar with the disability process and are considered experts in their fields. Their assessment of the claimant's physical limitations is generally consistent with the medical evidence outlined above, which fails to show significant deficits (Exhibits 6F, 7F, 8F, 9F, 14F, 15F, 17F, 18F, 20F, 22F, 24F, and 25F). Therefore, the undersigned affords significant weight to the opinions provided by Doctors Gilman and Thomason despite additional pulmonary restrictions.

On March 5, 2017, Warren Langworthy, M.D., claimant's primary care physician, provided an assessment regarding the claimant's ability to function physically. He opined the claimant retained the capacity to lift up to ten pounds occasionally. He stated the claimant was able to sit up to two hours total in an eight-hour workday. He indicated the claimant could stand and walk up to two hours total in an eight-hour workday. He noted the claimant could grasp, turn, twist objects and perform fine bilateral manipulation maneuvers ten percent of an eight-hour workday. He reported the claimant was able to reach and perform overhead reaching techniques only five percent of an eight-hour workday. He indicated the claimant would be required to shit [*sic*] positions at will and take unscheduled hourly breaks due to chronic back pain. He opined the claimant could occasionally twist but never stoop, crouch, climb stairs or ladders. He concluded the claimant would be absent from work more than twice a month due to impairment related symptoms and treatment (Exhibit 23F).

Dr. Langworthy's assessment of the claimant's functional limitations is generally inconsistent with the medical evidence as a whole, including his own findings. His assessment of the claimant's limitations is overly pessimistic and appears based primarily on the claimant's subjective complaints instead of objective medical evidence. Dr. Langworthy even specifically notes on his assessment that some of his opinion were "estimates". Nowhere in the medical records does Dr. Langworthy state the claimant is disabled or suffers extreme limitations. Further, the claimant has described performing numerous daily activities including traveling out of state to visit friends and family (Exhibit 7F, 15F, 17F, 18F, 23F, and 24F). Therefore, the undersigned affords little weight to the opinion provided by Dr. Langworthy.

. . .

16

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In addition to analysis of the medical records, the undersigned has other reasons for failing to find the claimant's allegations consistent with the medical evidence. For instance, as seen above, the evidence fails to document worsening of the claimant's physical . . . impairments. In fact, medical records consistently show stability of musculoskeletal [and] respiratory . . . health symptoms (Exhibits 2F-25F).

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The record indicates the claimant independently attends to personal care needs, performs household tasks, drives, shops in stores and frequently travels to visit friends and family member [*sic*] (Exhibits 3E, 10E, 12F and 13F). Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

The undersigned finds the claimant experiences some limitations but only to the extent described in the residual functional capacity above. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes do not sustain the claimant's allegations of a disabling impairment.

TR 27-29; 32-33.

The ALJ properly considered and weighed the opinion evidence relating to Plaintiff's severe physical impairments. With regard to Dr. Workman's opinion, when according Dr. Workman's opinion little weight, the ALJ explained that Dr. Workman was a one-time examining source who was not involved in treatment of Plaintiff and determined that Dr. Workman's opinion regarding Plaintiff's manipulative restrictions and other physical impairments were not supported and "generally inconsistent with the medical evidence as a

whole." TR 28. Because Dr. Workman was a one-time examining source whose opinion was not supported by, and inconsistent with, the evidence of record, the ALJ's according little weight to Dr. Workman's opinion was proper.

Additionally, when considering the opinion of Plaintiff's treating physician and according it little weight, the ALJ explained that she found Dr. Langworthy's opinion about Plaintiff's functional limitations to be "generally inconsistent with the medical evidence as a whole, including his own findings," and further found that Dr. Langworthy's assessment was "overly pessimistic and appears based primarily on [Plaintiff's] subjective complaints instead of objective medical evidence." TR 29. As Plaintiff's treating physician, the ALJ would be justified in according greater weight to Dr. Langworthy's opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As the ALJ explained, however, Dr. Langworthy's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. See 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2). Accordingly, the ALJ was not required to accord Dr. Langworthy's opinion greater weight.

The ALJ also properly considered and weighed the opinions of State agency consultants, Drs. Gilman and Thomason. After first noting that "Doctors Gilman and Thomason are familiar

with the disability process and are considered experts in their fields," the ALJ found that "[t]heir

assessment of [Plaintiff's] physical limitations is generally consistent with the medical evidence

outlined above, which fails to show significant deficits."  TR 28. Because they were familiar

with the disability process and experts in their fields, and because their opinions were generally

consistent with the medical evidence, the ALJ accorded significant weight to their opinions. This

determination is within the ALJ's province.

Because there were contradictory opinions in the record, because the ALJ properly

discussed the medical, testimonial, and opinion evidence of record, because the ALJ

appropriately explained the weight accorded to the opinions and the reasons therefor, and

because those reasons were supported by the evidence of record, the ALJ's evaluation of the

medical and opinion evidence was proper, as was the ALJ's determination with regard to

Plaintiff's physical limitations and the resultant physical residual functional capacity.

Accordingly, the ALJ's decision on this point stands.

The ALJ also considered the medical, testimonial, and opinion evidence relating to

Plaintiff's mental impairments as follows:

> Turning to the mental impairments, the claimant complained of
> experiencing symptoms of depression and post-traumatic stress
> disorder, which allegedly causes irritability, frequent mood swings,
> low energy and motivation levels, feelings of helplessness and
> sleep disturbances.  On August 21, 2013, he followed up with
> Karen Star [*sic*], a licensed counselor, for further evaluation of his
> symptoms.  Upon presentation, it was noted the claimant had not
> sought any mental health treatment since 2009 and at that time, he
> appeared to be quite stable psychiatrically.  His global assessment
> functioning (GAF) score was 90, which according to *The DSM-IV-
> TR* (2000, p. 34) explains that global assessment of functioning
> (GAF) ratings in the range of 71-80 indicate that if any symptoms
> are present, they are only transient and expectable reactions to
> psychosocial stressors resulting in no more than slight impairment.

Nonetheless, the claimant was prescribed conservative medications such as Adderall, Methylphenidate and Lexapro. Treatment was successful; however, in July 2014, the claimant stated current treatment modalities were no longer effective (Exhibit 4F page 19). Adjustments in medications were made and Klonopin was prescribed. Medical records throughout the relevant period in question consistently document improvements in the claimant's condition.

Despite a history of sporadic treatment, in August 2016, the claimant admitted he successfully managed his symptoms of anxiety and was feeling fairly optimistic; staying engaged with his adult children and involved in his marriage. In fact, he was noted to be a "Bright" individual. It should be noted the claimant was not interested in any medication adjustments (Exhibit 25F).

As recently as January 2017, the claimant stated he was "feeling well emotionally with Adderall" (Exhibit 25F page 10). He testified to riding as a passenger to New York City with his wife to celebrate New Year's Eve (Testimony). In April 2017, the claimant admitted he and his wife were traveling to Ohio for the weekend to visit friends. He stated he frequently talks to those friends and even receives advice about personal issues (Exhibit 4F page 21). Likewise, he stated he was making subsequent plans to visit his mother-in-law in Florida to visit his mother-in-law [*sic*]. It should be noted that while receiving treatment for other unrelated ailments, a magnetic resonance imaging (MRI) of the claimant's brain performed on November 30, 2015, failed to show evidence of an acute infarct, hemorrhage or other intracranial abnormality. Only age related changes, mild maxillary and ethmoid sinus mucosal disease was reported (Exhibit 16F page 5).

Turning to the opinion evidence, Heather Turner, the claimant's wife, provided a third party function report that was supportive of the claimant's allegations of disability. Mrs. Turner alleged limitations the claimant experienced on a daily basis with regard to his activities, social functioning, concentration, persistence and pace. Her statements were considered in terms of understanding the severity of the claimant's impairments. However, the undersigned gives her opinion of the claimant's functional ability limited weight, because of its high degree of subjectivity and lack of medically acceptable standards (Exhibit 9E).

In August 2014, Karen Starr, a licensed counselor, provided a narrative statement regarding the claimant's ability to function mentally with no specific functional limitations. Treatment notes

indicate the claimant failed to attend many scheduled visits. In fact, between March 2009, and August 2013, no treatment was rendered for his condition. The claimant presented for treatment on August 21, 2013, but has not received any treatment for his condition since (Exhibit 5F). Thus, the claimant was seen only in August 2013, despite nearly five (5) years encompassing the period in question between his alleged onset date and the date last insured in this matter.

Ms. Starr is a licensed counselor. As such, this medical source is not an "acceptable medical source" under the Regulations for authoritative independent opinions. The source is an "other source" whose opinions cannot be given preeminence over opinions from acceptable medical sources, such as licensed psychiatrists and psychologists (20 CFR 416.913). Further, her assessment is based primarily on the claimant's subjective complaints instead of actual treatment. As seen above, the evidence indicates the claimant did not receive any mental health treatment between March 2009 and August 2013. On August 21, 2013, the claimant presented for treatment but has not sought treatment since (Exhibit 5F page 18). Therefore, the undersigned affords very little weight to the opinion provided by Ms. Starr, who does not have a long-standing treatment relationship, rather, examined the claimant on only one occasion, very early in the period in question.

On December 23, 2014, Frank Kupstas, Ph.D., a State agency psychologist, opined the claimant was able to maintain concentration, persistence and pace for low-level detailed tasks with appropriate breaks spread throughout the workday. He concluded the claimant could adequately interact with supervisors, peers and the genera- [*sic*] public and adapt to routine changes in the workplace (Exhibits 1A).

On May 15, 2015, Douglas Robbins, Ph.D., a State agency consultant, reviewed the claimant's file at the reconsideration level and concurred with the prior assessment provided by Dr. Kupstas (Exhibit 3A).

Doctors Kupstas and Robbins are familiar with the disability process and are considered expert's [*sic*] in their fields. Their assessment of the claimant's functional abilities is generally consistent with the medical evidence as a whole. Treatment notes do not show physician references to acute or marked deficits. Therefore, the undersigned affords significant weight to the

opinions provided by Doctors Kupstas and Robbin [*sic*] (Exhibits 1A and 3A).

By request of the Social Security Administration, the claimant presented to a psychological evaluation on December 8, 2014, performed by Mistie D. Germek, Ph.D. Upon presentation, he was noted to be alert and oriented to person, place and time. He reported a history of depression; however, he denied suicidal and homicidal ideations. Both auditory and visual hallucinations were also denied. No facial tics or tremors were displayed during examination. His volume of speech was normal and his responses were clear and coherent. He successfully recalled three named objects immediately and after a three minute delay. He correctly completed serial 3 subtractions from 20. He also identified four recent United States Presidents. He showed use of good basic vocabulary and basic math skills. He reportedly followed both oral and written instructions. As to activities of daily living, he stated he independently attended to personal care needs, prepared simple meals, performed household tasks and drove once a week. He concluded his main social supports were his family and friends.

Dr. Germek opined the claimant's short-term memory functioning was moderately impaired. She stated the claimant was moderately impaired in terms of his ability to sustain concentration; however, he showed no evidence of long-term or remote memory functioning. She reported the claimant was able to follow both oral and written instructions. In addition, she indicated the claimant was markedly impaired in terms of adapting to change and managing stress. Although no formal testing was performed, his intellectual functioning was estimated in the average range. The claimant's diagnosis was unspecified bipolar and related disorder, panic disorder and nightmare disorder (Exhibit 12F).

Dr. Germek is a one-time treating source who was not involved in treatment of the claimant. Her assessment of the claimant's functional limitations is generally inconsistent with the medical evidence as a whole. For instance, treatment notes provided by Danita l. Hughes, Ed.D., a licensed psychologist, indicate he was successfully managing his symptoms of anxiety, staying engaged with his adult children and involved in his marriage (Exhibit 19F). Test results from a neuropsychological evaluation performed on December 8, 2015, failed to show intellectual deficits or poor cognitive faculties (Exhibit 21F). In addition, Dr. Germek's assessment of the claimant's functional limitations are quite general in nature and restrictions were not expressed in appropriate

mental functional terms (Exhibit 13F). Therefore, the undersigned affords little weight to the opinion provided by Dr. Germek.

On December 8, 2015, the claimant presented for a neuropsychological evaluation, performed by Warren Langworthy, M.D., the claimant's primary care physician. Upon presentation, the claimant was given 18 questions and correctly answered all questions. He identified basic information such as age, phone number, home address, current month and the Capital of the United States. A mental status examination was assessed to determine the severity of the claimant's symptoms. In terms of the Wechsler Adult Intelligence Scale (WAIS), the claimant obtained a Full Scale (IQ) Intelligence Quotient of 104, which falls in the average range. Test results from the Verbal Comprehension Test, Working Memory Index and Processing Speed Index fell in the average range. The Perceptual Reasoning Index fell within the high average range. The Wechsler Memory Scale-IV was also administered. Test results from the Auditory Memory Index, Visual Working Memory index [*sic*] and Visual Memory Index fell in the average [*sic*]; however, Delayed Memory Index reportedly fell in the high average range. Likewise, neuropsychological test results fell within normal limits. The Clinical Assessment of Depression Scale was estimated in the moderate to severe range based on the claimant's history of emotional challenges. Results from the Barkely Deficits in Executive Functioning Scale indicate the claimant's ADHD was a major contributing factor to his difficulty with executive self-management.

Dr. Langworthy opined general comparisons suggesting stability in terms of memory functioning. He stated the claimant was able to retain an expected and normal level of information over a time delay. He concluded results from the neuropsychological testing failed to reveal then-current suppression of memory, intellect or other basic cognitive faculties.

Dr. Langworthy's assessment of the claimant's ability to function mentally is quite general in nature but is consistent with the medical evidence outlined above, which fails to show acute mental deficits (Exhibit 21F). Therefore, the undersigned affords significant weight to the assessment of Dr. Langworthy to the extent the claimant is capable of performing work at the sedentary exertional level.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however,

the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In addition to analysis of the medical records, the undersigned has other reasons for failing to find the claimant's allegations consistent with the medical evidence. For instance, as seen above, the evidence fails to document worsening of the claimant's . . . mental impairments. In fact, medical records consistently show stability of . . . mental health symptoms (Exhibits 2F-25F).

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The record indicates the claimant independently attends to personal care needs, performs household tasks, drives, shops in stores and frequently travels to visit friends and family member [*sic*] (Exhibits 3E, 10E, 12F and 13F). Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

The undersigned finds the claimant experiences some limitations but only to the extent described in the residual functional capacity above. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes do not sustain the claimant's allegations of a disabling impairment.

TR 29-33.

The ALJ properly considered and weighed the medical, testimonial, and opinion evidence relating to Plaintiff's mental impairments. Addressing the opinion of Ms. Starr, the ALJ noted that, as a licensed counselor, Ms. Starr was an "other source" whose opinion is to be considered but cannot be given preeminence over opinions from "acceptable medical sources" such as licensed psychiatrists and psychologists. TR 30, *citing* 20 CFR § 416.913. In determining that Ms. Starr's opinion was due "very little weight," the ALJ noted that Plaintiff was seen on only one occasion in nearly a five year period, Ms. Starr's opinion found no specific functional limitations and was based primarily on Plaintiff's subjective complaints rather than on actual

treatment, and because Ms. Starr had examined Plaintiff on only one occasion "very early in the period in question," she did not have a long-standing treatment relationship with Plaintiff that would warrant greater weight. *Id.* The ALJ articulated her reasons for according Ms. Starr's opinion "very little weight"; those reasons were proper and the ALJ was not required to give greater weight to Ms. Starr's opinion.

The ALJ additionally considered the opinion of Dr. Germek, who examined Plaintiff at the request of the Social Security Administration. TR 31. When according Dr. Germek's opinion little weight, the ALJ noted that Dr. Germek was a "one-time treating source who was not involved in treatment of [Plaintiff]," and found Dr. Germek's opinion regarding Plaintiff's functional limitations to be "generally inconsistent with the medical evidence as a whole." *Id.* Additionally, the ALJ found Dr. Germek's "assessment of [Plaintiff's] functional limitations [to be] quite general in nature and restrictions were not expressed in appropriate mental functional terms." *Id., citing* Exhibit 13F. Again, the ALJ articulated her reasons for accorded Dr. Germek's opinion little weight; those reasons were likewise proper and the ALJ was not required to accord greater weight to Dr. Germek's opinion.

With regard to the ALJ's accordation of greater weight to the opinions of State agency consultants, Drs. Kusptas and Robbins, the ALJ first noted that "Doctors Kupstas and Robbins are familiar with the disability process and are considered experts in their fields," and then found that "[t]heir assessment of the claimant's functional abilities is generally consistent with the medical evidence as a whole." TR 31. The ALJ's articulated basis for according greater weight to the opinions of Drs. Jupstas and Robbins were in accordance with the Regulations.

Because there were contradictory opinions in the record, because the ALJ properly discussed the medical, testimonial, and opinion evidence of record, because the ALJ

appropriately explained the weight accorded to the opinions and the reasons therefor, and because those reasons were supported by the evidence of record, the ALJ appropriately considered and weighed the opinion evidence of record. Accordingly, Plaintiff's contentions on this point fail.

As noted, Plaintiff also asserts that the ALJ erroneously considered the medical evidence relating to his mental health because the record contains, *inter alia*, evidence of: "MARKED restrictions . . . due to attention deficit disorder" (Docket No. 17-1, p. 8, *citing* TR 1779); Plaintiff's unemployment (*Id.*); a suicide attempt and psychiatric unit visits (*Id., citing* TR 900); GAF scores (*Id., citing* TR 108); "hypersensitiv[ity] to germs and his paranoia about getting sick (*Id., citing* TR 903); and Dr. Ward's treatment notes (*Id.* at 10, *citing* TR 1451-1461). As can be seen in the quoted passages above and throughout the record, however, the ALJ discussed other evidence that supported her findings, such as, *inter alia*, Plaintiff's sporadic treatment history and an admission in August 2016 that "he successfully managed his symptoms of anxiety" (TR 29); GAF scores above a range that indicate symptoms "resulting in no more than slight impairment" (*Id.*); conservative medication prescriptions and documented improvement in his condition (*Id.*); and reported abilities to prepare meals, get along with others, drive, shop, read, spend time with friends and family, maintain appropriate grooming and hygiene, and engage in his marriage (*Id.*; TR 24-25).

Additionally, the ALJ considered whether Plaintiff's mental conditions met or equaled Listing 12.04 or 12.06 and ultimately determined:

> The severity of the claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any impairment listed in 1.04, 3.00, 12.04 or 12.06. This conclusion is supported by beneficial effects of treatment occurring within 12

months of the alleged onset date and by the medical opinions. See discussion below.

The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has mild limitations. The claimant alleged that he has difficulty remembering generally and completing tasks. However, the claimant also stated that he could perform simple maintenance, prepare meals, shop, drive, and read. In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, and respond to questions from medical providers.

In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that he has difficulty engaging in social activities and spending time in crowds. However, according to his statements, the claimant is also able to get along with others, shop, and spend time with friends and family. Finally, the medical evidence shows that the claimant had a good rapport with providers and appeared comfortable during appointments (Exhibits 3E, 10E, 12F, and 13F).

Finally, the claimant has no limitations in his ability to adapt or manage himself. The claimant asserted that he has difficulties managing [his] mood. That said, the claimant also stated that he is able to handle self-care and personal hygiene. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene (Exhibits 3E, 10E, 12F and 13F).

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the

"paragraph B" criteria were not satisfied. The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The medical evidence of record does not establish a chronic affective disorder of at least 2 years' duration along with repeated episodes of decompensation, residual disease such that a minimal increase in mental demands would cause the individual to decompensate, or a history of 1 or more years' inability to function outside a highly supportive living arrangement as required by listing 12.04c. Further, the medical evidence of record does not establish that the claimant has the complete inability to function independently outside the area of his home as is required by listing 12.06c.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

Accordingly, the undersigned finds the claimant has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. This determination is consistent with the finding of Frank Kupstas, Ph.D. and Douglas Robbins, Ph.D., the State agency medical consultant (Exhibits 1A and 3A).

TR 24-25.

Although Plaintiff cites to some evidence that supports his position, as discussed above, even if the evidence could support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Callahan*, 109 F.3d at 273. Further, the above discussion of the ALJ's findings and evidence in support of those findings demonstrate that the ALJ considered the record as a whole. While it is true that some of

the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination. Because substantial evidence supports the ALJ's determination, the ALJ's decision must stand.

## 2. <u>Combined Effect of Impairments on the Residual Functional Capacity</u>

Plaintiff next contends that the ALJ "failed to give adequate weight to the severity of [Plaintiff's] conditions and most notably, failed to consider the synergistic impact of all of these disorders working in concert against [Plaintiff] to prevent him from sustaining employment." Docket No. 17-1, pp. 4-5. Additionally, Plaintiff asserts that the ALJ "erred in not considering all [of Plaintiff's] impairments in a totality of the circumstances inquiry." *Id.* at 5. In support of this claim, Plaintiff argues that the ALJ "made highly relevant and an integral part of her decision-making process, [Plaintiff's] ability to continue to perform household chores," while "from spouse Heather Turner's statements . . . this Court can see that [Plaintiff] can really only help her with chores and he needs significant help with his own [activities of daily living]." *Id.,* *citing* TR 482-493. In further support for his claim, Plaintiff cites "inner-ear infections causing dizziness, disorientation, and associated pain;" "CT and X-rays [that] show a continued degradation of the left-side of [Plaintiff's] heart and he has experienced arrythmias and shortness of breath upon light exertion;" "mortality rates of lung transplant recipients" and the "toxic effects of the continued need for the prescribed anti-rejection medications;" the "ongoing concerns that a lung transplant survivor will likely have as well as a list of Mr. Turner's other problems and the severity of each and how they affect him when considered together" noted by Dr. Robbins; "trips to the ER . . . resulting from kidney stones; and Plaintiff's absenteeism "due to his numerous severe impairments." *Id.* at 5-6.

Defendant responds that the ALJ's weighing of Plaintiff's severe and non-impairments is supported by substantial evidence. Docket No. 18, p. 4. Defendant argues that the ALJ properly weighed Plaintiff's severe impairments along with Plaintiff's non-severe impairments including hearing loss, kidney stones, diabetes, digestive disorder, and hypertension. *Id.* at 5-6.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec. of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations, rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502,WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

As demonstrated in the statement of error above, when making her RFC determination, the ALJ in the case at bar properly considered the medical, opinion, and testimonial evidence of record in relation to Plaintiff's severe and non-severe impairments. When finding Plaintiff's hearing loss, history of kidney stones, diabetes mellitus and hypertension to be non-severe impairments, the ALJ explained:

> The claimant reported a history of hearing loss; however, he has not received any treatment for this condition nor has any hearing devices been prescribed for this condition. A consultative examination performed on December 13, 2014, documented some difficulties hearing; however, no history of hearing deficits has been noted by the claimant's primary care physician (Testimony; Exhibits 7F, 13F, 17F, 18F and 14F). Thus, there [*sic*] record fails to show more than minimal audiological deficits.

The claimant has a history of kidney stones and underwent cystourethroscopy, bilateral retrograde ureterophyelograms, bilateral ureterenoscopy with holminum laser lithotripsy, stone basket extraction of calculi, left ureteral stent removal and right ureteral stent placement. Treatment was successful. Medical records throughout the relevant period in question indicate the claimant only experiences episodic flare-ups (Exhibits 14F, 24F and 25F).

. . .

The claimant was diagnosed with diabetes mellitus, with glucose levels in the range of 140-170. He was prescribed Glipizide, which successfully stabilized his condition. No complications or side effects were reported (Exhibits 15F, 17F, 18F and 24F).

The claimant was further diagnosed with hypertension with blood pressure in the range of 118/80-126/84. He was prescribed conservative medications such as Clonide, Norvasc and Metoprolol, which stabilized his condition. No complications or side effects were reported. No evidence of end organ damage has been identified (Exhibits 15F, 17F, 18F and 24F).

The undersigned considered all symptoms, treatment notes, and opinion evidence in accordance with the requirements of 20 CFR 404.1527, 416.927, and SSR 96-2p, SSR 96-5p, SSR 96-6p, and SSR 06-3p. As there are no indications that these conditions will more than minimally affect the claimant's ability to work fulltime, the undersigned considers them non-severe.

TR 23.

Because the ALJ properly considered the totality of the medical, opinion, and testimonial evidence of record when determining which of Plaintiff's impairments were severe and non-severe and when rendering her ultimate RFC determination, and because the ALJ's findings were supported by substantial evidence, the ALJ's decision must stand. Plaintiff's argument on this point fails.

### 3. __ALJ's Durational Requirement Finding__

Plaintiff next claims that the ALJ erred when she found that Plaintiff "had no severe impairments that had lasted for more than twelve months nor any that were expected to last longer than twelve months." Docket No. 17-1, p. 14. Plaintiff argues that he "has a variety of severe impairments that, when considered together, have all lasted more than a year and none have any reasonable prognosis for a favorable recovery." *Id.* at 14-15. Plaintiff cites as support his treatment by Ms. Starr, history of absenteeism, stress-related panic attacks "induc[ing] heart arrhythmias that hospitalized [him]," and overall declining of condition since the alleged onset date. *Id.* at 15-16.

Defendant responds that the ALJ's statement relating to the durational requirement was "clearly a scrivener's error" since the ALJ "had already found that Plaintiff's severe impairments included degenerative disc disease, history of lung transplant, depressive disorder, ADHD, and PTSD." Docket No. 18, p. 5, n.2, *citing* TR 23. As support for his assertion that the ALJ's statement was "clearly a scrivener's error," Defendant notes that the ALJ proceeded to analyze steps three through five of the sequential evaluation and argues that she would not have done so if she had indeed found that Plaintiff did not meet the twelve month durational requirement. *Id.*, *citing* TR 24-34.

At step two of the sequential evaluation, the ALJ found as follows:

> Through the date last insured, the claimant had the following
> severe impairments: degenerative disc disease of the lumbar spine;
> history of lung transplant; depressive disorder; attention deficit
> hyperactivity disorder and post-traumatic stress disorder (20 CFR
> 404.1520(c)).

TR 23.

As discussed in the statement of error above, the ALJ also evaluated Plaintiff's hearing loss, history of kidney stones, diabetes mellitus and hypertension, but ultimately determined that he medical records indicated that these conditions were non-severe. *Id.* When discussing Plaintiff's non-severe impairments, the ALJ additionally stated:

> The record does not reflect that the claimant has suffered from a medically determinable impairment that is expected to result in death; has lasted for a continuous 12 months; or has been shown by any medical evidence to be expected to last for a continuous period of at least 12 months. Pursuant to 20 CFR 404.1509 and 416.909, I find that the claimant has not met the durational requirements of the Act.

TR 23-24.

Although a finding that a claimant's medically determinable impairment(s) do not meet the durational requirements of the Act prevents an award of benefits and ends the sequential evaluation process, the ALJ in the case at bar, after finding that Plaintiff's impairments had not met the durational requirements of the Act, continued to discuss and analyze the medical, testimonial, and opinion evidence of record as she worked her way through the remaining steps of the sequential evaluation process and ultimately determined that Plaintiff was not disabled under the Act. As discussed in the statements of error above, the ALJ properly considered the evidence of record, reached a reasoned decision and explained the reasons therefor; the ALJ's decision was supported by substantial evidence and resulted in the same outcome as would have resulted had the ALJ stopped the sequential evaluation upon a step two determination that Plaintiff's medically determinable impairments failed to meet the durational requirement – namely, a finding that Plaintiff was not disabled under the Act and therefore not entitled to benefits. Plaintiff's contention on this point fails.

## 4. **ALJ's Listed Impairment Finding**

As his final statement of error, Plaintiff contends that the ALJ erroneously concluded that Plaintiff did not meet listing 12.04. Docket No. 17-1, p. 13. Defendant responds that substantial evidence supports the ALJ's findings in relation to the listing. Docket No. 18, p. 4.

With regard to Listing 12.04, "Depressive, bipolar and related disorders," the Code of Federal Regulations requires "[m]edical documentation of the requirements of paragraph 1 or 2," including with respect to depressive disorder, characterized by five or more of the following:"

    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of suicide.

20 CFR § 404, Subpt. P, App. 1, Listing 12.04(A)(1).

Additionally, with respect to Bipolar disorder, the Regulations require a showing of three or more of the following:

    a. Pressured speech;
    b. Flight of ideas;
    c. Inflated self-esteem;
    d. Decreased need for sleep;
    e. Distractibility;
    f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
    g. Increase in goal-directed activity or psychomotor agitation.

20 CFR § 404, Subpt. P, App. 1, Listing 12.04(A)(2).

Upon a showing of either or both, the Regulations also require:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR § 404, Subpt. P, App. 1, Listing 12.04(B)-(C).

As can been seen, the Regulations explicitly require that an ALJ must find that a plaintiff meets the criteria in paragraph A and meet the criteria of either paragraph B or C in order to meet or medically equal Listing 12.04. *See* 20 CFR § 404, Subpt. P, App. 1, Listing 12.04. As demonstrated in the quoted passages contained in the first statement of error, the ALJ in the case at bar appropriately considered the medical evidence regarding bipolar disorder, found that Plaintiff did not meet the criteria for paragraph B or C of 12.04, and found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. TR 24-25. Although Plaintiff contends that he met one of the paragraph A criteria through "involvement in activities that have a high probability of painful consequences that are not recognized" (Docket No. 17-1, p. 13), a finding that Plaintiff met listing 12.04 would

have required the ALJ to also find Plaintiff meeting the criteria for paragraph B or C, which the ALJ did not so find. Accordingly, Plaintiff's contention on this ground is without merit.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge