IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM JACKSON TURNER, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, Commissioner of Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | NO. 3:18-cv-00868 <br> JUDGE RICHARDSON |

## ORDER AND MEMORANDUM OPINION

Pending before the Court are a Report and Recommendation of the Magistrate Judge (Docket No. 19) ("R&R"), Objections filed by Plaintiff (Docket No. 20) ("Objections"), and a Response to the Objections filed by Defendant (Doc. No. 21) ("Response").

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*. Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made.[1]

---

[1] The Local Rule also provides that any objections must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary,

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the Report and Recommendation, the Objections, the Response, and the file. The Objections of the Plaintiff are overruled, and the Report and Recommendation is adopted and approved. Accordingly, Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) is **DENIED**, and this case is **DISMISSED**.

## BACKGROUND

The facts are aptly set forth in the R&R and need not be repeated here in full. Plaintiff Turner filed a Title II application for disability insurance benefits on July 8, 2014, alleging disability[2] beginning on February 12, 2012.[3] (Doc. No. 15 at 248).[4] Plaintiff identified the following as the physical or mental conditions that limit his ability to work: double lung transplant, multiple level back injury, osteoporosis, chronic digestive disorder, adult attention deficit disorder, depression, post-traumatic-stress disorder, chronic kidney stones, and high blood pressure. (Doc. No. 15 at 103 and 420). Plaintiff received a hearing and a supplemental hearing on his disability application before an Administrative Law Judge ("ALJ"). (Doc. No. 15 at 26, 56 and 72). This

---

transcripts of the record to apprise the District Judge of the bases for the objections. Also, a separately filed supporting memorandum of law must accompany the objections. Local Rule 72.02(a).

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); *Barnhouse v. Saul*, Civil Action No. 1:19-cv-000126-HBB, 2020 WL 2859405 at *2 (W.D. Ky. June 2, 2020).

[3] The R&R and Plaintiff's original Application Summary for Insurance Benefits (Doc. No. 15 at 248) indicate that the onset of Plaintiff's disability was February 12, 2012. The Decision of the ALJ indicates that the onset date was February 12, 2013. (Doc. No. 15 at 26).

[4] The administrative record is filed at Doc. No. 15, and the Court will refer to the page numbers placed on the document by the Court's docketing system ("page ___ of 1785").

case is an appeal of the ALJ's February 6, 2018 decision to deny disability benefits.[5] The Magistrate Judge recommended that the decision of the ALJ be affirmed. Plaintiff has filed five objections to the R&R. (Doc. No. 20 at 2).

## **STANDARD OF REVIEW**

The critical questions before a district court in reviewing a decision by an ALJ are whether the ALJ's determination was supported by substantial evidence and whether the ALJ applied the correct legal standards. *Shelton v. Saul,* No. 2:18-cv-00093, 2020 WL 1284628, at *2 (M.D. Tenn. Mar. 18, 2020) (citing 42 U.S.C. § 405(g)). The court conducts its review under a "highly deferential," substantial-evidence standard. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 838 (M.D. Tenn. 2019). The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019), *cited in Jones* at 838.

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficient evidence" to support the agency's factual determinations. *Biestek,* 139 S. Ct. at 1154. And, whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. *Id*. Substantial evidence is "more than a mere scintilla" and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id., cited in Shelton*, 2020 WL 1284628, at *2; *see also Rottman v. Comm'r of Soc. Sec.*, No. 19-2205, slip op. at 3 (6th Cir. June 19, 2020). The standard, by all accounts, amounts to "less than a preponderance of the evidence," and is met even if the record could reasonably support the opposite conclusion. *Brown v. Comm'r of Soc. Sec.,* --- F.

---

[5] The ALJ found that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Doc. No. 15 at 40).

App'x ---, 2020 WL 2768857, at *3 (6th Cir. 2020). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Jones,* 392 F. Supp. 3d at 838 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).

## ANALYSIS

A. Objection Nos. 1 and 4

Plaintiff objects to the Magistrate Judge's finding that the ALJ properly considered and weighed the opinion evidence related to Plaintiff's severe physical impairments (Objection 1), and he objects to the R&R's conclusion that the ALJ properly considered the totality of the medical, opinion and testimonial evidence when determining which of Plaintiff's impairments were severe (Objection 4). Because these objections involve similar arguments, the Court will consider them together.

To show that he has a "severe" impairment, a claimant must show that he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement[6] and "significantly limits" his ability to do one or more basic work activities. *Barnhouse v. Saul*, Civil Action No. 1:19-cv-000126-HBB, 2020 WL 2859405 at *3 (W.D. Ky. June 2, 2020). Alternatively, the claimant must show that he suffers from a combination of impairments that is severe and meets the durational requirements. *Id.* To satisfy the "medically determinable" requirement, the claimant must present objective medical evidence that demonstrates the existence

---

[6] A claimant must show that his physical or mental impairment can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

of a physical or mental impairment. *Id*. Symptoms and subjective complaints alone are insufficient to establish the existence of a medically determinable impairment. *Id*.

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; history of lung transplant; depressive disorder, attention deficit hyperactivity disorder and post-traumatic stress disorder. (Doc. No. 15 at 29). The impairments she found to be non-severe were hearing loss, kidney stones, diabetes mellitus, and hypertension. (*Id.*). She gave specific reasons for each finding of a non-severe impairment (*id.* at 29-30) and, having considered "all symptoms, treatment notes, and opinion evidence," stated that there are no indications that these non-severe conditions more than minimally affect Plaintiff's ability to work fulltime. (*Id.* at 30). She also found that the non-severe conditions did not meet the durational requirements of the statute. (*Id.*)

Federal regulations state that the ALJ will consider the limiting effects of *all* of a claimant's impairment(s), even those that are not severe, in determining the claimant's residual functional capacity.[7] 20 C.F.R. § 416.945(c); *Emard v. Comm'r of Soc. Sec.,* 953 F.3d 844, 852 (6th Cir. 2020) (finding of non-severity is "legally irrelevant" and therefore harmless where ALJ properly considers non-severe impairments at later steps in the analysis). If there is a finding of severity as to even one impairment, the administrative law judge should consider both the severe and non-severe impairments during the rest of her analysis. *Norris v. Saul*, Civil Action No. 1:19-cv-00133-HBB, 2020 WL 3041276, at *3 (W.D. Ky. June 5, 2020). Here, the ALJ specifically acknowledged that she was required to "consider all of the claimant's impairments, including impairments that

---

[7] An individual's "residual functional capacity" is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. (Doc. No. 15 at 28); *see also* 20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do despite your limitations.")

are not severe." (Doc. No. 15 at 28). Therefore, even though she found certain impairments to be "non-severe," she still considered them, so (as stated in *Emard*) any error in the finding of non-severity is harmless.

Plaintiff contends that even though the ALJ found that Plaintiff had severe physical impairments, she failed to give adequate weight to the severity of these conditions and to consider the synergistic impact of all of these disorders working in concert. (Doc. No. 20-1 at 2).[8] In other words, Plaintiff argues that the ALJ erred in not considering all his impairments in a "totality of the circumstances" inquiry.[9] (*Id.*) Plaintiff contends that evidence reflecting this "synergistic impact" included medical records from his visits to the St. Thomas Rutherford Emergency Room ("ER"), notes from his primary care physician, Dr. Langworthy, and his counselor,[10] and notes from Dr. Workman. (*Id.* at 2). Dr. Langworthy's opinions are discussed below in response to Plaintiff's Objection No. 2.

The ALJ afforded Dr. Workman's opinion little weight because he was a one-time examining source and not involved in the treatment of Plaintiff's conditions. She found that his assessment of Plaintiff's functional limitations was generally inconsistent with the medical

---

[8] The Court wishes to point out that Plaintiff's citations to cases from New York, Kansas, the 7th Circuit, the 11th Circuit, the 4th Circuit, and Illinois and from 1978, 1992, 1997 are not helpful to the Court, particularly when there are much more recent relevant cases from the Sixth Circuit and district courts therein, including those cited herein.

[9] ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment. *Baker v. Berryhill*, Civil Action No. 5:16-0821-DCN-KDW, 2017 WL 9289362, at *7 (D. S.C. Mar. 10, 2017); *Desautels v. Comm'r of Soc. Sec.*, Case No. 2:15-cv-279-FTM-MRM, 2016 WL 4055470, at *9 (M.D. Fla. July 29, 2016); *see also Howard v. Comm'r of Soc. Sec.*, Case No. 1:14-cv-1207, 2015 WL 8482778, at *7 (W.D. Mich. Dec. 9, 2015).

[10] The Court assumes this reference is to Karen Starr, a licensed counselor, whose opinion is discussed below in response to Plaintiff's Objection Nos. 3 and 5.

evidence as a whole. (Doc. No. 15 at 34). Dr. Workman evaluated Plaintiff in December of 2014 (*Id*. at Ex. 13F). Plaintiff does not identify specifically which portions of Dr. Workman's notes he believes support his claims, but Dr. Workman found that Plaintiff had trouble with hearing, bending, fine and gross manipulative skills, and the range of motion in his lumbar spine and extremities were not full. (*Id.*). On the other hand, he found that Plaintiff's gait, spine, grip strength, motor strength in extremities, and cervical range of motion were within normal limits. He (*Id.*).

There is substantial evidence in the record to support the ALJ's assigning lesser weight to Dr. Workman's opinion for the same reasons that she assigned lesser weight to the opinions of Dr. Langworthy as discussed below. The Court finds that the ALJ appropriately evaluated the evidence from Dr. Workman and set forth her reasons for affording it little weight.

Plaintiff cites ER records beginning at page 591 of the Administrative Record. Plaintiff describes these ER visits as "frequent," but the records at these pages relate to only *two* ER visits: (1) October 21, 2013 for a kidney stone and (2) December 18, 2012 for chest pain. (Doc. No. 15 at 591-622, 627-686). Nonetheless, the Court notes that, later in the administrative record, there are medical records showing numerous ER visits by Plaintiff to Vanderbilt due to kidney stones (*Id.* at 706, 732, 719-721, 735-744, 746-755, 1237-1256) and medical records from Christ Hospital in Cincinnati, Ohio, related to removal of a kidney stone in November of 2014 (*Id*. at 1024-1132).

The ALJ noted that Plaintiff had a history of kidney stones. However, citing to medical records from Vanderbilt and Dr. Langworthy[11] (*id.* at 29), she found that the medical records indicate only "episodic flare-ups" of kidney stones (*Id*.). The ER records to which Plaintiff refers

---

[11] The ALJ here mistakenly cites also to the records of Genesis Psychiatric Services (Ex. 25F), which have nothing to do with kidney stones. (Doc. No. 15 at 29). But this error is harmless.

show nothing different, reflecting only one episode of a kidney stone. Moreover, Plaintiff has not pointed the Court to any record of problems with kidney stones since 2014.

The ALJ acknowledged that Plaintiff was diagnosed with hypertension but found that the prescribed medications stabilized this condition. (Doc. No. 15 at 30). The second ER record Plaintiff cites deals with his complaint of "chest pain" on December 18, 2012. That record reflects that the pain was "not suggestive of anginal type pain" (Doc. No. 15 at 631) and that Plaintiff was released to home and told to continue with the medications he was taking for hypertension. (*Id.*) His degree of symptoms was described as "moderate to minimal." (*Id.* at 640).

Although the ALJ did not specifically discuss the combined effect of Plaintiff's impairments or mention his non-severe impairments in assessing his "residual functional capacity," she did state that she made that assessment "[a]fter careful consideration of the entire record" (Doc. No. 15 at 31) and that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (*Id.* at 32). In addition, in summarizing the applicable law, the ALJ specifically noted that in making the residual functional capacity finding, she "must consider all of the claimant's impairments, including impairments that are not severe." (citing 20 C.F.R. §§ 404.1520(3) and 404.1545 and Social Security Ruling ("SSR") 96-8p). (*Id.* at 28). The Sixth Circuit recently stated: "District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p."[12] *Emard*, 953 F.3d at 851-52.

---

[12] The "mandate" of SSR 96-8p is to "consider all of the claimant's impairments, including impairments that are not severe." *Emard*, 953 F.3d at 851.

The ALJ was also required to consider the subjective allegations of the claimant. *Barnhouse,* 2020 WL 2859403, at *4. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he has a disability. *Id*. There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id*.

The ALJ is required to assess any subjective complaints of pain by a claimant under a two-step process set forth by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847 (6th Cir. 1986) and later codified by the Commissioner. *Thrasher v. Saul,* No. 2:19-0010, 2020 WL 606598, at *4 (M.D. Tenn. Feb. 7, 2020). Pursuant to this standard, the ALJ must (1) examine whether the record contains objective medical evidence of an underlying medical condition and, if such evidence exists, (2) determine whether the objective medical evidence confirms the alleged severity of pain arising from the condition or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Duncan,* 801 F.2d at 853; *Thrasher*, 2020 WL 606598, at *4.

The second prong of this analysis requires the ALJ to consider a claimant's statements regarding the "intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." *Thrasher*, 2020 WL 606598, at *4. In doing so, the ALJ must consider factors such as: the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and other factors concerning the claimant's functional limitations and restrictions due to pain. *Id*.; 20 C.F.R.

§ 404.1529(c)(3). The ALJ cited these factors in discussing her determination of the residual functional capacity. (Doc. No. 15 at 32-33, 38-39).

The ALJ acknowledged this standard and found that the record contains objective medical evidence of an underlying medical condition that, in Plaintiff's case, "could reasonably be expected to cause the alleged symptoms." (Doc. No. 15 at 33 and 39). She found, however, that the medical records fail to substantiate Plaintiff's complaints. (*Id.* at 33 and 38). Specifically, with regard to his musculoskeletal issues, the ALJ cited medical records that show successful treatment and also examinations throughout the relevant period that consistently show normal ranges of motion. She further noted that Plaintiff had not presented for treatment for this alleged disability since August 2013. (*Id.*) (citing Exs. 7F, 13F, 15F, 17F, 18F, 23F, and 24F).

As for Plaintiff's pulmonary issues (which are based at least in part upon a double lung transplant in 2003), the ALJ noted that lung scans performed throughout the relevant period were consistently stable. (Doc. No. 15 at 33). She also noted that medical records throughout the relevant period repeatedly indicate that Plaintiff's transplant was stable and that he was reportedly doing quite well. (*Id.*)[13]

Thus, she found that the objective medical evidence failed to substantiate the alleged severity of pain arising from Plaintiff's conditions (Doc. No. 15 at 33) and that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 38). She gave additional reasons for not finding Plaintiff's allegations consistent with the medical evidence—for

---

[13] The Court notes the following example: Ex. 14F (Doc. No. 15 at 1271-75) reflects visits to Vanderbilt on January 8, 2015, and February 3, 2015, where the medical records show no significant change, lung function stable, "no concerns," and "no evidence of acute cardiopulmonary findings."

example, the lack of documentation of the worsening of Plaintiff's impairments; consistent evidence of stability of Plaintiff's musculoskeletal, respiratory and mental health symptoms; and Plaintiff's ability to independently attend to his personal needs, perform household tasks, drive, shop in stores, and frequently travel to visit friends and family members. (*Id*. at 38) (citing Exs. 3E, 10E, 12F, and 13F). Thus, the ALJ stated that Plaintiff does experience limitations, but only to the extent described in the residual functional capacity she had determined. (*Id.* at 39).

With respect to Objection No. 4, Plaintiff also complains that the ALJ gave little weight to Plaintiff's wife's testimony. The ALJ considered information from Plaintiff's wife concerning Plaintiff's limitations (Ex. 9E) in terms of understanding the severity of Plaintiff's impairments. (Doc. No. 15 at 36). Noting its high degree of subjectivity and lack of medically acceptable standards, the ALJ gave this testimony limited weight. (*Id.*) The Court assumes the ALJ gave this testimony limited weight based also on the reasons she did not fully accept Plaintiff's own testimony about his limitations, as set forth herein. But even if she did not, she did consider this testimony and explained why she gave it the limited weight she gave it.

The Court finds that the ALJ adequately explained her reasoning for not accepting all of Plaintiff's allegations concerning his symptoms. She cited evidence in the medical records and in Plaintiff's own descriptions of his daily activities to support her decision;[14] and, even though there is evidence in the record to support Plaintiff's allegations, there is substantial evidence in the record supporting the ALJ's determination. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Barnhouse*, 2020 WL 2859405, at *4 (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

---

[14] *See, e.g.,* Doc. No. 15 at Ex. 25F and Plaintiff's testimony, Doc. No. 15, beginning at page 74.

Plaintiff's Objection Nos. 1 and 4 are overruled.

B. Objection No. 2

Plaintiff objects to the Magistrate Judge's conclusion and reasoning that the ALJ properly gave little weight to the opinions of Plaintiff's treating physician, Dr. Langworthy.[15] The ALJ found that Dr. Langworthy's assessment of Plaintiff's ability to function physically (Doc. No. 15 at 1739-1741) was inconsistent with the medical evidence as a whole,[16] including Dr. Langworthy's own findings. (*Id.* at 35). The ALJ noted that Dr. Langworthy never stated that Plaintiff was disabled or suffered extreme limitations. (*Id.*) The ALJ also found that Dr. Langworthy's assessment of Plaintiff's limitations was "overly pessimistic and appears based primarily on the claimant's subjective complaints instead of objective medical evidence." (Doc. No. 15 at 35). She stated that Dr. Langworthy's opinions conflict with Plaintiff's own descriptions of performing numerous daily activities, citing to Exs. 7F, 15F, 17F, 18F, 23F and 24 F. She concluded that she "affords little weight to the opinion provided by Dr. Langworthy." (*Id.*).

An ALJ must give the opinion of a "treating physician" (one who has an ongoing treatment relationship with the claimant) controlling weight[17] if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[15] To the extent that Plaintiff is referring to the opinions of his mental health counselor, Ms. Starr, those opinions are discussed below with regard to Plaintiff's mental impairments.

[16] The Magistrate Judge acknowledged that the ALJ would be justified in according greater weight to Dr. Langworthy's opinion unless that opinion contradicts other substantial evidence in the record. Then he stated: "As the ALJ explained, however, Dr. Langworthy's opinion contradicts other substantial evidence in the record." The Magistrate Judge does not identify what that "other substantial evidence" is (Doc. No. 19 at 18), but the ALJ does. *See* discussion and citations herein.

[17] Plaintiff does not argue that Dr. Langworthy's opinions should have been given controlling weight, just greater weight.

evidence in the case record. *Rottman,* slip op at 4; *Brown*, 2020 WL 2768857, at *3. Where the treating physician's opinion is contrary to substantial evidence in the record, the ALJ determines how to weigh that opinion by considering a number of factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.*[18] The ALJ must give good reasons regarding her weighing of the treating physician's opinion; that is, reasons supported by the record and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (quoting *Blakeley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406-07 (6th Cir. 2009)).

Dr. Langworthy opined that Plaintiff could lift up to ten pounds occasionally; sit up to two hours total in an eight-hour workday; stand and walk up to two hours in an eight-hour workday; grasp, turn, twist objects, and perform fine bilateral manipulation maneuvers ten percent of an eight-hour workday; reach and perform overhead reaching techniques only five percent of an eight-hour workday; be required to shift positions at will and take unscheduled hourly breaks due to chronic back pain; could occasionally twist but never stoop, crouch, climb stairs or ladders; should avoid exposure to pulmonary irritants; and would be absent from work more than twice a month due to impairment-related symptoms and treatment. (Doc. No. 15 at Ex. 23F).[19]

---

[18] *See also* 20 C.F.R. § 416.927 for guidance on evaluating opinion evidence for claims filed, like the one in this case, before March 27, 2017.

[19] Plaintiff asserts that when questioned using Dr. Langworthy's medical assessment, the vocational expert before the ALJ was unable to identify a job for which Plaintiff would be qualified, but Plaintiff fails to cite any place in the record where this information can be found.

The ALJ agreed with Dr. Langworthy that Plaintiff could lift up to ten pounds occasionally and that he could stand and walk up to two hours total in an eight-hour workday. The ALJ found, however, that Plaintiff could sit up to six hours total in an eight-hour workday, which was the opinion of the state agency consultant, Dr. Gilman. (Doc. No. 15 at Ex. 1A). The ALJ also agreed with Dr. Langworthy that Plaintiff should never climb ladders, ropes or scaffolds, and that Plaintiff must avoid concentrated exposure to pulmonary irritants; but she found that he could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.* at 31-32).

Although Dr. Langworthy's assessment of Plaintiff's ability to function physically indicated that Plaintiff's prognosis was "fair at best," the ALJ found that the medical records reflect more stability of the musculoskeletal and respiratory issues, and control, to a large extent, with medication. (*See, e.g.,* Doc. No. 15 at 1271-72, 1017-1020, 1156-1157, 1286-87, and 1294-99).

The Court finds that the ALJ gave appropriate weight to the opinions of Dr. Langworthy as to Plaintiff's physical impairments—indeed, she accepted several of those opinions and incorporated them into her findings—given the totality of the objective medical evidence in the record. Plaintiff's Objection No. 2 is overruled.

C. Objection Nos. 3 and 5

Plaintiff also objects to the R&R's conclusions regarding the ALJ's evaluation of the evidence related to Plaintiff's mental impairments, including whether she properly evaluated the evidence concerning his bipolar disorder. These two objections will be considered together.

Plaintiff argues that the ALJ failed to even mention certain important evidence, such as his attempted suicide and admission to psychiatric units on multiple occasions. He contends that the ALJ ignored "the overwhelming trend towards increased severity" of his mental impairment and his demonstrated inability to sustain employment. He also cites his low GAF score and the reports

that he is hypersensitive to germs and paranoid about getting sick. (Doc. No. 20-1). To support his claim of disability, Plaintiff understandably points to evidence in the record about his mental impairments, but merely marshaling evidence to suggest that he is disabled is insufficient to prevail on this appeal of the ALJ's decision; he must demonstrate that the ALJ's contrary determination is not supported by substantial evidence. *Shelton*, 2020 WL 1284628, at *2.

Plaintiff also objects to the Magistrate Judge's finding that he did not have a mental impairment or combination of impairments that meets or medically equals one of the listed impairments.[20] Federal regulations provide specific, detailed guidance for the ALJ to evaluate the severity of a claimant's mental impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 lists specific criteria for depressive, bipolar, and related disorders (Section 12.04) and anxiety and obsessive-compulsive disorders (Section 12.06). The ALJ found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal those criteria. (Doc. No. 15 at 30).

Plaintiff contends that he meets the listed impairment definitions for depression and he has a condition that has lasted for more than two years (Doc. No. 20-1 at 9), but he does not cite anything in the medical record to show how he meets the criteria. He claims that there is "significant mitigating evidence" (*id.* at 7), but he does not point to specific places in the record for the Court to find that evidence. Plaintiff also complains that the ALJ ignored an overwhelming trend towards increased severity of his impairments, but he fails to cite to medical evidence suggesting any such trend. The Administrative Record in this case is 1785 pages long, filed all as

---

[20] If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listed impairment and meets the durational requirement, the claimant is disabled. 20 CFR § 404.1520(a)(4)(iii).

one document. The Court will not "'*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party.'" *Olmstead v. Fentress Cty., TN*, No. 2:16-cv-00046, 2019 WL 1556657, at *13 (M.D. Tenn. Apr. 10, 2019) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)).

Plaintiff claims that the ALJ failed to consider or adequately explain how his severe mental impairments, including bipolar disorder, severe anxiety, and depression, would not impact his ability to sustain employment. Plaintiff also argues that the ALJ relied almost exclusively on consultative exams while giving little weight to a treating physician in reaching her conclusions as to his mental impairment. The Court assumes that Plaintiff is referring to Karen Starr as his "treating physician" for mental impairments.

The medical records reflect that Plaintiff saw Ms. Starr, a licensed counselor, following his lung transplant in 2003 and periodically thereafter until March of 2009. He did not see her between March 2009 and August 2013. (Doc. No. 15 at Ex. 4F). Starr's medical record from August 21, 2013, states that Plaintiff is "really doing exceptionally well," is very stable psychiatrically, is upbeat, relaxed, and happy, and has good judgment and insight. (*Id*. at 908-909). On that day, Starr recorded that Plaintiff was "stable now on meds." (*Id*. at 909). On August 6, 2014, in a follow-up letter to the Social Security Administration a year later, Starr represented that Plaintiff had major depressive disorder in partial remission, PTSD delayed onset, and ADHD. (*Id.* at Ex. 5F).

The ALJ gave little weight to the opinion of Ms. Starr because she is a licensed counselor rather than a medical doctor and because she had not seen Plaintiff since August of 2013.[21] (Doc.

---

[21] She also did not see Plaintiff between March 2009 and August 2013.

No. 15 at 36). In addition, Starr's narrative opinion did not identify specific functional limitations caused by Plaintiff's mental impairments. (*Id.* and Ex. 5F).

Plaintiff does not challenge the opinions of the other mental health professionals specifically except to say that the ALJ relied almost exclusively on consultative exams. The ALJ credited the opinions of two state agency consultants who reviewed the medical records. Drs. Kupstas and Robbins both found Plaintiff could do low-level tasks with appropriate breaks spread throughout the workday. (Doc. No. 15 at Exs. 1A and 3A). The ALJ also gave significant weight to the neurological report of Elliott Ward, PhD (*Id*. at Ex. 21F).[22]

Plaintiff was referred for evaluation to Dr. Ward by Dr. Langworthy, not by the agency. (Doc. No. 15 at 1451,1461). Dr. Ward performed a complete neuropsychological evaluation, including numerous tests and nationally recognized evaluations. (*Id*. at 37-38 and 21F). The testing indicated average or high average ranges except for the Clinical Assessment of Depression Scale, which was in the moderate-to-severe range based on Plaintiff's history of emotional challenges. (*Id*. at 38, 1460).[23] Dr. Ward's testing also indicated that Plaintiff's ADHD was a major contributing factor to his difficulty with executive self-management. (*Id*.) Dr. Ward's diagnosis was (1) persistent depressive disorder with anxious distress, (2) posttraumatic stress disorder, (3) attention deficit hyperactivity disorder, combined presentation, and (4) panic disorder without agoraphobia. (*Id*.) He did not rule out the possibility that Plaintiff's medications could have

---

[22] The ALJ mistakenly attributes this neurological examination and opinion to Dr. Langworthy, but the medical evidence clearly indicates it came from Dr. Ward. Again, this error is not material.

[23] The Wechsler Memory Scale-IV indicated current stability in memory system; the Wechsler Adult Intelligence Scale IV indicated a full-scale IQ of 104, average range; and additional neuropsychological tests were within normal limits. (Doc. No. 15 at 1460).

exacerbated or triggered additional cognitive challenges but found that the tests clearly did not reveal current suppression of memory, intellect, or other basic cognitive functions. (*Id*. at 1461).

The ALJ's reliance upon Dr. Ward's opinion is clearly warranted. His evaluation was thorough and his conclusions are substantial evidence that support the ALJ's decision. Plaintiff's Objection Nos. 3 and 5 are overruled.

## CONCLUSION

For all of these reasons, the Objections of the Plaintiff are overruled, and the Report and Recommendation is adopted and approved. Accordingly, Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) is **DENIED**, and this case is **DISMISSED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE